Patience Milrod (SBN 77466)
Amelia Arámbula (SBN 210291), of counsel
Law Office of Patience Milrod
985 North Van Ness Avenue
Fresno, California 93728
Telephone:     (559) 246-7239
               (559) 824-7829
Email: pm@patiencemilrod.com

Attorneys for Petitioners

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CULTIVA LA SALUD, a nonprofit community benefit organization; and FRESNO BUILDING HEALTHY COMMUNITIES, a nonprofit community benefit organization,<br><br>               Petitioners,<br><br>    vs.<br><br>COMMUNITY HOSPITALS OF CENTRAL CALIFORNIA, a California nonprofit public benefit corporation; FRESNO COMMUNITY HOSPITAL AND MEDICAL CENTER, dba COMMUNITY HEALTH SYSTEM, a California nonprofit public benefit corporation; and DOES 1-15,<br><br>               Respondents. | Case No.:  1:24-cv-01065-JLT-EPG<br><br>PETITIONERS' POINTS AND AUTHORIES IN SUPPORT OF PETITIONERS' MOTION FOR REMAND OF PETITION TO STATE COURT<br><br>**Hearing Date:**  October 22, 2024<br>**Time**:  9:00 a.m.<br>**Place**:  2500 Tulare Street<br>         Courtroom 4<br>         Fresno, California 93721<br><br>**Judge**:  Hon. Jennifer Thurston |

///

///

///

i

Petitioners' Points and Authorities In Support of Motion to Remand to Fresno County Superior Court
*Cultiva La Salud, et al. vs. Community Hospitals, et al.*

**TABLE OF CONTENTS**

I.     PROCEDURAL STATUS..............................................................................................................1

II.    THE REMOVAL STATUTE IS STRICTLY CONSTRUED. ...................................................1

III.   RESPONDENTS HAVE FAILED TO BEAR THEIR BURDEN OF DEMONSTRATING THE PROPRIETY OF REMOVAL TO THIS COURT. ......................................................................................................................1

   A.   ANALYTIC FRAMEWORK ................................................................................................1

   B.   THE WELL-PLEADED COMPLAINT RULE REQUIRES REMAND TO THE STATE COURT. ...................2

      1.   Petitioners' First Cause of Action alleges violation, and seeks remedies under, exclusively state law provisions governing expenditure of Supplemental Medi-Cal funds. ..................................................3

         a.   Statutes on which Petitioners rely. ..........................................................3

         b.   Relief sought. ..............................................................................8

      2.   Petitioners' Second Cause of Action alleges violation, and seeks remedies under, exclusively state statutes and regulations. ................................................................................10

         a.   Statutes on which Petitioners rely. ........................................................10

         b.   Relief sought. ............................................................................12

      3.   Respondents cannot meet the Supreme Court's four-part test for removal............................12

         a.   Petitioners' claims do not "necessarily raise" a federal question. ......................13

         b.   Respondents cite federal statutes not actually in dispute in this matter. ................17

         c.   Without a federal question, the Petition does not raise "substantial" federal issues.......18

         d.   Resolution of this case in federal court threatens the federal-state balance essential to the Medicaid program. 19

   C.   THE ARTFUL PLEADING DOCTRINE CANNOT SUPPORT FEDERAL COURT JURISDICTION. .......................20

IV.    THE ISSUES RAISED IN THE PETITION ARE NOT SUITABLE FOR THIS COURT'S EXERCISE OF SUPPLEMENTAL JURISDICTION. ...........................................................................................................21

V.     CONCLUSION ...................................................................................................22

# TABLE OF AUTHORITIES

**Cases**

*Arco Envtl. Remediation, L.L.C. v. Dep't. of Health & Envtl. Quality of Mont.*, 213 F.3d 1108, 1114 (9th Cir.2000).................................................................................................. 10

*Armstrong v. N. Mariana Islands*, 576 F.3d 950 (9th Cir. 2009) ................................................ 16

*Bennett v. Sw. Airlines Co.*, 484 F.3d 907 (7th Cir. 2007) .......................................................... 18

*Bright v. Bechtel Petroleum, Inc.*, 780 F.2d 766 (9th Cir. 1986)........................................... 20, 21

*Caterpillar, Inc. v. Williams*, 482 U.S. 386, 107 S.Ct. 2425, 96 L.Ed.2d 318 (1987)............... 1, 3

*Christianson v. Colt Industries Operating Corp.*, 486 U.S. 800, 108 S.Ct. 2166, 100 L.Ed.2d 811 (1988).............................................................................................................................. 17

*City of Oakland v. BP PLC*, 969 F.3d 895 (9th Cir.2020)................................................. 2, 13, 18

*County. of San Mateo v. Chevron Corp.*, 32 F.4th 733 (9th Cir. 2022), cert. denied *sub nom.* *Chevron Corp. v. San Mateo Cnty., California*, 143 S.Ct. 1797, 215 L.Ed.2d 678 (2023).. 8, 13

*Easton v. Crossland Mortgage Corp.*, 114 F.3d 979 (9th Cir.1997) ........................................ 2, 12

*Empire Healthchoice Assur., Inc. v. McVeigh*, 547 U.S. 677, 126 S.Ct. 2121, 165 L.Ed.2d 131 (2006).......................................................................................................................... 19

*Ethridge v. Harbor House Rest.*, 861 F.2d 1389 (9th Cir.1988). .................................................. 13

*Exec. Software N. Am., Inc. v. U.S. Dist. Ct. for Cent. Dist. of California*, 24 F.3d 1552 (9th Cir. 1994), overruled on other grounds by *California Dep't of Water Res. v. Powerex Corp.*, 533 F.3d 1087 (9th Cir. 2008) .................................................................................................. 21

*Federated Dept. Stores, Inc. v. Moitie*, 452 U.S. 394, 101 S.Ct. 2424, 69 L.Ed.2d 103 (1981) .. 20

*Franchise Tax Bd. v. Construction Laborers Vacation Trust*, 463 U.S. 1, 9-10, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983) ........................................................................................ 3, 11, 14

*Franks v. Civigenics*, No. C05-5673RJB, 2005 WL 3211422........................................... 11, 12

*Gaus v. Miles, Inc.*, 980 F.2d 564 (9th Cir.1992) ...................................................................... 1, 8

*Grable & Sons Metal Products, Inc. v. Darue Engineering & Mfg.*, 545 U.S. 308, 125 S.Ct. 2363, 162 L.Ed.2d 257 (2005) ................................................................................ 2, 13, 18

*Gunn v. Minton*, 568 U.S. 251, 133 S.Ct. 1059, 185 L.Ed.2d 72 (2013)........................... 2, 13, 18

*Hopkins v. Walker*, 244 U.S. 486, 37 S.Ct. 711, 61 L.Ed. 1270 (1917) ...................................... 18

*Hornish v. King Cnty.*, 899 F.3d 680 (9th Cir. 2018) ................................................ 11, 14, 15, 18

*Imagineering, Inc. v. Kiewit Pac. Co.*, 976 F.2d 1303 (9th Cir.1992), overruled on other grounds by *Diaz v. Gates*, 420 F.3d 897 (9th Cir. 2005) (en banc)................................................ 22

*Libhart v. Santa Monica Dairy Co.*, 592 F.2d 1062 (9th Cir.1979) .............................................. 1

*Lippitt v. Raymond James Fin. Services Inc.*, 340 F.3d 1033 (9th Cir.2003).......................... 2, 20

*McMaster v. Coca-Cola Bottling Co. of California*, 392 F. Supp. 2d 1107 (N.D. Cal. 2005)....... 2

*Merrell Dow Pharms., Inc. v. Thompson*, 478 U.S. 804, 106 S.Ct. 3229, 92 L.Ed.2d 650 (1986)2, 8, 10, 18

*Nat'l Fed'n of of Independent Business v. Sebelius*, 567 U.S. 519 (2012)................................ 7, 19

*Perea v. Dooley*, 2017 WL 4676682 (N.D.Cal.), *1 .......................................................... 7, 15, 16

*Rains v. Criterion Systems, Inc.*, 80 F.3d 339 (9th Cir.1996).............................................. 12, 17

*Redwood Theatres, Inc. v. Festival Enters., Inc.*, 908 F.2d 477 (9th Cir.1990) .......................... 20

*Rivet v. Regions Bank of La.*, 522 U.S. 470, 118 S.Ct. 921, 139 L.Ed.2d 912 (1998) .................. 2

*Rodriguez v. AT&T Mobility Servs. LLC*, 728 F.3d 975 (9th Cir. 2013)...................................... 1

*Sauk-Suiattle Indian Tribe v. City of Seattle*, 56 F.4th 1179 (9th Cir. 2022), *cert. den.*, 144 S.Ct. 74, 217 L.Ed.2d 11 (2023)................................................................................................. 14

*United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966) .... 22

*Valdez v. Allstate Ins. Co.*, 372 F.3d 1115 (9th Cir. 2004)............................................................ 1

ii

Petitioners' Points and Authorities In Support of Motion to Remand to Fresno County Superior Court
*Cultiva La Salud, et al. vs. Community Hospitals, et al.*

*Verlinden B.V. v. Central Bank of Nigeria,* 461 U.S. 480, 103 S.Ct. 1962, 76 L.Ed.2d 81 (1983) 3

**Statutes**

16 U.S.C. § 1247, *et seq.*........................................................................................... 15
28 U.S.C. § 1331................................................................................................ 3, 12, 21
28 U.S.C. § 1367............................................................................................... 21, 22
42 U.S.C. § 1396(a)(30)(A) of the Medicaid Act .......................................... 15
42 U.S.C. § 1396(a)(8) of the Medicaid Act .................................................. 15
42 U.S.C. § 1396-1, *et seq* of the Medicaid Act ........................................... 12
California Code of Civil Procedure § 2016.090 ............................................... 1
California Government Code § 11135 ........................................... 10, 11, 17, 22
California Welfare & Institutions Code § 14105.98 ......................................... 9
California Welfare and Institutions Code § 14005.40 ..................................... 5
California Welfare and Institutions Code § 14043.2 ....................................... 6
California Welfare and Institutions Code § 14166.12 ..................................... 9
California Welfare and Institutions Code § 14169.50, *et seq.*........................ 9
California Welfare and Institutions Code Chapters 7 and 8 (commencing with §§ 14000 and 14200) ........................................................................................................... 7

**Other Authorities**

CMFA 2021 Revenue Bonds (Community Health System), Series 2021A and 2021B Official Statement.............................................................................................................. 11
DHCS Form 9098, Medical Provider Agreement, Institutional Provider.
    https://mcweb.apps.prd.cammis.medi-cal.ca.gov/assets/2EB4391F-BBCD-4505-986E-29BD3A8C738C/21enrollment_DHCS9098.pdf?access_token=6UyVkRRfByXTZEWIh8j8Q aYylPyP5ULO ........................................................................................................... 9
DHCS, *Aged, Blind and Disabled Federal Poverty Level Expansion Program.*
    https://www.dhcs.ca.gov/services/medi-cal/eligibility/Pages/ABD-FPL-Expansion.aspx#:~:text=ABD%20FPL%20Expansion,no%2Dcost%20Medi%2DCal............. 7
DHCS, *Asset Limit Changes for Non-MAGI Medi-Cal*, https://www.dhcs.ca.gov/services/medi-cal/eligibility/Pages/Asset-Limit-Changes-for-Non-MAGI-Medi-Cal.aspx. ............................ 7
DMHC Financial Solvency Standards Board, *Medi-Cal Changes in 2024*, November 15, 2023, https://dmhc.ca.gov/Portals/0/Docs/DO/FSSBNov2023/AgendaItem5.DepartmentofHealthCar eServicesUpdate.pdf ............................................................................................... 6
Governor Newsom Office, *Medi-Cal Expansion Provided 286,000 Undocumented Californians With Comprehensive Health Care*, October 19, 2022, https://www.gov.ca.gov/2022/10/19/medi-cal-expansion-provided-286000-undocumented-californians-with-comprehensive-health-care/ ........................................................... 6
*Governor Newsom Signs Into Law First-in-the-Nation Expansion of Medi-Cal to Undocumented Californians Age 50 and Over, Bold Initiatives to Advance More Equitable and Prevention-Focused Health Care*, July 27, 2021. https://www.gov.ca.gov/2021/07/27/governor-newsom-signs-into-law-first-in-the-nation-expansion-of-medi-cal-to-undocumented-californians-age-50-and-over-bold-initiatives-to-advance-more-equitable-and-prevention-focused-health-care/ 6
MACPAC Issue Brief, *Federal Requirements and State Options: How states exercise flexibility under a Medicaid state plan*, August 2018.  https://www.macpac.gov/publication/federal-requirements-and-state-options/................................................................................. 5
MACPAC Issue Brief, *Matching Rates*, December 23, 2020, https://www.macpac.gov/subtopic/matching-rates/ .................................................... 7

**Treatises**

Caminker, *State Sovereignty and Subordinacy*, 95 Colum. L. Rev. 1001 (1995). ...................... 19

Chapman, Athena and Samantha Pellón, *Medi-Cal Explained Fact Sheet: Medi-Cal Financing and Spending*, commissioned by California Health Care Foundation, July 2023, pp.1-2. https://www.chcf.org/wp-content/uploads/2023/06/MediCalExplainedFinancingSpending.pdf 6

Theodore W. Ruger, *Of Icebergs and Glaciers: The Submerged Constitution of American Healthcare*, Law & Contemp. Probs., 215, 232 (2012) ............................................................. 7

**Regulations**

2 C.C.R. § 14020(ii)(1) ......................................................................................................... 11

22 C.C.R. § 51000.30(a)(2) .................................................................................................... 6

42 C.F.R. § 430.10 .................................................................................................................. 6

42 C.F.R. § 430.12(c) ............................................................................................................. 6

## MEMORANDUM OF POINTS AND AUTHORITIES
## IN SUPPORT OF REMAND TO STATE COURT

### I.      Procedural status

The within Petition was filed in the Fresno County Superior Court on August 7, 2024. On September 5, 2024, Petitioners served on Respondents a Demand for Initial Disclosures pursuant to California Code of Civil Procedure § 2016.090.  Respondents removed the within action to this Court on September 6, 2024.  On September 9, they sought an extension of time to November 12, 2024 to respond to the Petition, which was granted on September 11.  The Scheduling Conference in this Court is set for January 16, 2025.

### II.      The removal statute is strictly construed.

"Only [those] state court actions that originally could have been filed in federal court may be removed to federal court by the defendant." *Caterpillar, Inc. v. Williams,* 482 U.S. 386, 107 S.Ct. 2425, 2429, 96 L.Ed.2d 318 (1987).  "Federal jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance." *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir.1992), citing *Libhart v. Santa Monica Dairy Co.,* 592 F.2d 1062 (9th Cir.1979).

The "strong presumption" against removal jurisdiction means that the defendant always has the burden of establishing that removal is proper.  *Rodriguez v. AT&T Mobility Servs. LLC*, 728 F.3d 975, 977 (9th Cir. 2013); *Valdez v. Allstate Ins. Co.*, 372 F.3d 1115, 1117 (9th Cir. 2004); *Gaus v. Miles, Inc.,* 980 F.2d, 564, 566 (9th Cir.1992).

### III.      Respondents have failed to bear their burden of demonstrating the propriety of removal to this Court.

#### A.  Analytic framework

Plaintiff "is the master of ... her complaint and may avoid federal jurisdiction by exclusive reliance on state law." *Easton v. Crossland Mortgage Corp., 114 F.3d 979, 982 (9th*

1

Petitioners' Points and Authorities In Support of Motion to Remand to Fresno County Superior Court
*Cultiva La Salud, et al. vs. Community Hospitals, et al.*

Cir.1997).  Thus, federal question jurisdiction "may not be sustained on a theory that the plaintiff has not advanced."  *Merrell Dow Pharms., Inc. v. Thompson,* 478 U.S. 804, 809 n. 6, 106 S.Ct. 3229, 92 L.Ed.2d 650 (1986).

Federal-question removal requires a two-pronged analysis:  first, the Court applies the well-pleaded complaint rule (see *infra*); second, if the plaintiff has not pled a federal cause of action on the face of the complaint, the Court determines whether "federal law completely preempts a plaintiff's state law claim" (*Rivet v. Regions Bank of La.*, 522 U.S. 470, 475, 118 S.Ct. 921, 139 L.Ed.2d 912 (1998)), or plaintiff has raised a substantial federal question but has cast the pleadings in such a way as to avoid federal jurisdiction.  *McMaster v. Coca-Cola Bottling Co. of California*, 392 F. Supp. 2d 1107, 1111–12 (N.D. Cal. 2005), citing *Lippitt v. Raymond James Fin. Services Inc.,* 340 F.3d 1033, 1041-1042 (9th Cir.2003).

The Supreme Court has enunciated a four-part test that applies here:  "federal jurisdiction over a state law claim will lie if a federal issue is:  (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress."  *Gunn v. Minton*, 568 U.S. 251, 258, 133 S.Ct. 1059, 1065, 185 L.Ed.2d 72 (2013), citing *Grable & Sons Metal Products, Inc. v. Darue Engineering & Mfg.,* 545 U.S. 308, 313-314, 125 S.Ct. 2363, 162 L.Ed.2d 257 (2005).

All four requirements must be met for federal jurisdiction to be proper.  *City of Oakland v. BP PLC*, 969 F.3d 895, 904-905 (9th Cir.2020), citing *Gunn, supra*, 568 U.S. at 258.

### B.  The well-pleaded complaint rule requires remand to the state court.

As the Ninth Circuit explained in *City of Oakland v. BP PLC, supra*, at 903, the Supreme Court has determined that Congress' statutory grant of jurisdiction to the federal

district courts conferred "a more limited power" than the full scope of judicial power accorded in the Constitution.  Rather, '[t]he general rule, referred to as the 'well-pleaded complaint rule,' is that a civil action arises under federal law for purposes of § 1331 when a federal question *appears on the face of the complaint*."  [Citing *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392, 107 S.Ct. 2425, 96 L.Ed.2d 318 (1987). (emphasis added).]

However, even reference to federal law in a complaint is not enough for removal: jurisdiction under 28 U.S.C. § 1331 requires more than a mere federal ingredient.  *Verlinden B.V. v. Central Bank of Nigeria,* 461 U.S. 480, 494-95, 103 S.Ct. 1962, 76 L.Ed.2d 81 (1983). The well-pleaded complaint rule provides that removal is proper only where the complaint demonstrates that the case "arises under" federal law, such that a right created by the Constitution or the laws of the United States must be an *essential element* of the plaintiff's cause of action.  *Franchise Tax Bd. v. Construction Laborers Vacation Trust,* 463 U.S. 1, 9-10, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983), (emphasis added).

Here, Petitioners exclusively ground their claims for relief on California statutory schemes.  They do not challenge the constitutionality, nor seek interpretation, of any federal law.  What they seek to do is to compel Community Health System to comply with *state* law.

### 1. Petitioners' First Cause of Action alleges violation, and seeks remedies under, exclusively state law provisions governing expenditure of Supplemental Medi-Cal funds.

#### a. Statutes on which Petitioners rely.

In paragraphs 43 through 65 the Petition generally describes the conduct at issue in the first cause of action.  At paragraph 106, the Petition specifies the statutory bases for these claims:  the various sections of the California Welfare and Institutions Code that govern the allocation and expenditure of specific funding streams in California's Medi-Cal program.

The Petition also provides context and background for California's Medi-Cal program,

which is the product of an overall statutory scheme in which the federal government has established basic goals and broad guidelines (which are undisputed in this action), and hands off to the states the responsibility and a wide discretion to implement each state's CMS-approved Plan.  The Medicaid and CHIP Payment and Access Commission ("MACPAC"), which advises Congress on Medicaid and CCHIP Policy, describes the scope of the states' role:  "Federal law sets broad requirements for Medicaid and mandates coverage of some populations and benefits, while leaving others optional.  Each state, however, has the responsibility of making the many policy and operational decisions that determine who is eligible for enrollment, which services are covered, and how payments to providers are established through its state plan."  MACPAC Issue Brief, *Federal Requirements and State Options: How states exercise flexibility under a Medicaid state plan,* August 2018. https://www.macpac.gov/publication/federal-requirements-and-state-options/.

Those "many policy and operational decisions" have resulted in a California program that looks vastly different from Medicaid implementation in other states.  With federal Medicaid laws and regulations as a floor, California has taken advantage of the discretion intrinsic in this system to dramatically expand access to health care for low-income populations across the state.  In 2016, *all* Medi-Cal eligible children younger than 19 years became eligible for full-scope Medi-Cal; in 2020, young people ages 19 through 25 followed, regardless of immigration status[1]; in 2021, low-income adults aged 50 or older became eligible, again

---

[1]  Office of Governor Gavin Newsom, *Governor Newsom Signs Into Law First-in-the-Nation Expansion of Medi-Cal to Undocumented Californians Age 50 and Over, Bold Initiatives to Advance More Equitable and Prevention-Focused Health Care*, July 27, 2021, in which Governor Newsom asserted "the state has the most inclusive health coverage for low-income persons in the country" including extension of the Medi-Cal postpartum care period to 12 months without requiring a mental health diagnosis. https://www.gov.ca.gov/2021/07/27/governor-newsom-signs-into-law-first-in-the-nation-expansion-of-medi-cal-to-undocumented-californians-age-50-and-over-bold-initiatives-to-advance-more-equitable-and-prevention-focused-health-care/

4

Petitioners' Points and Authorities In Support of Motion to Remand to Fresno County Superior Court
*Cultiva La Salud, et al. vs. Community Hospitals, et al.*

regardless of immigration status[2].  In January of this year, Medi-Cal Adult Expansion began

providing full-scope Medi-Cal to California residents ages 26 through 49, regardless of

immigration status, if they meet all Medi-Cal eligibility criteria[3].  California has also increased

the income limits and eliminated strict asset limits for adults over age 65, persons under age 65

with a disability, and residents of long-term care facilities, allowing a larger number of

applicants to become eligible for no-cost Medi-Cal.[4]  Each of these policies illustrates

California's sovereign choices in implementing its Medi-Cal program, but it is a matter of

common knowledge that they are very, very different from policies to be found in states that

have chosen not to expand Medicaid coverage under the Affordable Care Act.

　　　Moreover, California's Medi-Cal program distributes billions of dollars in funds apart

from federal Medicaid funding.  Based on a formula which varies by type of enrollee and other

federal criteria, the federal government contributes a statutory minimum of 50 percent of every

dollar spent on qualified Medi-Cal expenditures.[5]  States are responsible for the share of the

---

[2]  Office of Governor Gavin Newsom, *Medi-Cal Expansion Provided 286,000 Undocumented Californians With Comprehensive Health Care*, October 19, 2022, https://www.gov.ca.gov/2022/10/19/medi-cal-expansion-provided-286000-undocumented-californians-with-comprehensive-health-care/

[3]  DMHC Financial Solvency Standards Board, *Medi-Cal Changes in 2024*, November 15, 2023, p. 24, https://dmhc.ca.gov/Portals/0/Docs/DO/FSSBNov2023/AgendaItem5.DepartmentofHealthCareServicesUpdate.pdf

[4]  California increased the income limit for Aged Blind & Disabled Medi-Cal from 100% to 138% of the Federal Poverty Level in 2020, with enactment of Welfare and Institutions Code § 14005.40 in 2019.

California allowed the cost of a beneficiary's Medicare Part B premium to be deducted from their income, regardless of how that premium is being paid in 2019.  See DHCS, *Aged, Blind and Disabled Federal Poverty Level Expansion Program.* https://www.dhcs.ca.gov/services/medi-cal/eligibility/Pages/ABD-FPL-Expansion.aspx#:~:text=ABD%20FPL%20Expansion,no%2Dcost%20Medi%2DCal.

In 2021, California became the first state in the nation to phase in elimination of the $2,000 asset test for an individual, $3,000 for a couple, for ALL Medi-Cal programs by 2024.  See DHCS, *Asset Limit Changes for Non-MAGI Medi-Cal*, https://www.dhcs.ca.gov/services/medi-cal/eligibility/Pages/Asset-Limit-Changes-for-Non-MAGI-Medi-Cal.aspx.

[5]  MACPAC Issue Brief, *Matching Rates*, December 23, 2020, https://www.macpac.gov/subtopic/matching-rates/

overall Medicaid budget not financed by the federal government, often called the "state share" or "nonfederal share" of costs.  For California, this includes its state share, plus 100% of costs for populations and services not eligible for federal Medicaid funds (e.g., immigrants without documentation, abortion services).  In California, most of this funding comes from the state general fund, which is supplemented by other state and local funding sources—including revenue from a statewide tax on tobacco products, financing from cities and counties, and fees and taxes on providers, health plans, and health systems[6].  The proper use of these billions of dollars paid by California taxpayers to provide health care for low-income Californians, is governed directly by California statutes.  Nothing in the Petition justifies a different conclusion.

California's State Plan specifies how the state will structure its own Medicaid program, describing the nature and scope of the program and committing the state to adhere to federal Medicaid requirements.  (*See*, 42 C.F.R. § 430.10.)  As California amends its State Plan as necessary to reflect material changes in state law, policy, organization, or operation of their Medicaid program and changes in federal law, CMS approves those amendments to ensure the programs meet *minimum* federal Medicaid requirements.  (See 42 C.F.R. § 430.12(c).) Petitioners do not dispute this statutory framework.  It is relevant here only to give context for the Medi-Cal Provider Agreement each CHS hospital executed with DHCS pursuant to Welfare and Institutions Code § 14043.2 and 22 C.C.R. § 51000.30(a)(2).  That Agreement incorporates commitments the Respondents have made to the State of California, and is evidence of Respondents' knowledge and understanding of their obligations to "comply with all applicable provisions of Chapters 7 and 8 of the Welfare and Institutions Code

---

[6] Chapman, Athena and Samantha Pellón, *Medi-Cal Explained Fact Sheet: Medi-Cal Financing and Spending*, commissioned by California Health Care Foundation, July 2023, pp.1-2. https://www.chcf.org/wp-content/uploads/2023/06/MediCalExplainedFinancingSpending.pdf

(commencing with §§ 14000 and 14200), and any applicable rules or regulations promulgated by DHCS pursuant to these Chapters." [7]  *This* is the "gravamen" of Petitioners' action:  neither the fact that California must obtain CMS approval, nor the fact that the federal government contributes a federal match, preempts Petitioners' state law claim.

Moreover, Medicaid statutes grant to state programs a significant amount of flexibility to determine supplemental Medicaid payments, allowing each state to design its own payment methods and amounts for most provider types, as long as their programs comply with broad federal regulations regarding payment consistency and program efficiency.  As the court in *Perea v. Dooley* pointed out, " 'Subject to its basic requirements, the Medicaid Act empowers States to "select dramatically different levels of funding and coverage, alter and experiment with different financing and delivery modes, and opt to cover (or not to cover) a range of particular procedures and therapies. States have leveraged this policy discretion to generate a myriad of dramatically different Medicaid programs over the past several decades." ' "  *Perea v. Dooley*, 2017 WL 4676682 (N.D.Cal.), *1, quoting  *Nat'l Fed'n of Independent Business v. Sebelius,* 567 U.S. 519, 629-30 (2012) (Ginsburg, J., concurring and dissenting) (quoting Theodore W. Ruger, *Of Icebergs and Glaciers: The Submerged Constitution of American Healthcare*, Law & Contemp. Probs., 215, 232 (2012)).

References to the context within which California has designed its Medi-Cal program, including the CMS approval process, do not satisfy the "arises under" test:  federal law is not a necessary element of Petitioners' claim.  *County of San Mateo v. Chevron Corp.*, 32 F.4th 733, 746 (9th Cir. 2022), cert. denied *sub nom. Chevron Corp. v. San Mateo County, California*,

---

[7] See DHCS Form 9098, Medical Provider Agreement, Institutional Provider, p. 3.
https://mcweb.apps.prd.cammis.medi-cal.ca.gov/assets/2EB4391F-BBCD-4505-986E-29BD3A8C738C/21enrollment_DHCS9098.pdf?access_token=6UyVkRRfByXTZEWIh8j8QaYylPyP5ULO

143 S.Ct. 1797, 215 L.Ed.2d 678 (2023).  Nor have Respondents identified any federal statute that would confer a right of action here (*Merrell Dow Pharmaceuticals v. Thompson,* 478 U.S. 804, 817, 106 S.Ct. 3229, 92 L.Ed.2d 650 (1986)), let alone one pursuant to which Petitioners are seeking relief.

California's Medi-Cal program is thoroughly a product of state-specific policy decisions: federal Medicaid statutes do not contemplate and do not reach, let alone govern, the health-care access questions at issue in this proceeding.  Petitioners do not quarrel with nor rely for relief on the basic federal Medicaid framework; the remedies sought here arise out of the statutory scheme California has built on that framework.  Respondents thus err when they allude to "the federal nature of these programs" and claim "federal law is necessarily implicated" in resolution of this case.  (Removal Notice, ¶ 7.)  Though they have the burden of justifying removal to this Court (*Gaus v. Miles, Inc.,* 980 F.2d at 566), Respondents fail to explain or to demonstrate in what way federal statutes are essential to any determination the Petitioners seek in this action.

### b.  Relief sought.

Petitioners' prayer for relief on the first cause of action (pages 50-52, ¶¶ 1-6) identifies the remedies sought based on the state statutes already cited in the Petition's first cause of action.  Although Respondents assert *passim* that Petitioners' claims rely on federal law and that of necessity they must be seeking federal remedies, at no point do we learn exactly which federal statutes are so essentially implicated, nor what remedies would be available federally that are not already available under state law.

One of the references on which Respondents ground their claim of federal jurisdiction occurs at ¶ 7 of the prayer, which quotes the language (including its reference to "federal law") of the Official Statement for Respondents' most recent bond issue.  Petition,  ¶ 59 (26:5-17)

8

Petitioners' Points and Authorities In Support of Motion to Remand to Fresno County Superior Court
*Cultiva La Salud, et al. vs. Community Hospitals, et al.*

and fn. 26 (26:23-25)[8].  The relief requested is available under California Welfare and

Institutions Code §§ 14169.50, *et seq*., §14105.98, and §14166.12, which strictly limit

expenditure of funds from the proceeds of the Hospital Provider fee and other Supplemental

Medi-Cal funding streams to provision of medical care for the indigent, and to supply

matching funds for federal participation.  A judicial determination of Petitioners' entitlement to

relief as requested in ¶ 7 requires no application of federal law, nor assessment of available

federal remedies.

    Apart from this mischaracterization of the context, Respondents have attempted to

conjure a federal claim out of scattered and incidental references to federal law.  In support of

their argument, they repeatedly refer to the *header* of Petitioners' first cause of action (Petition,

44:3-4)[9], even though the allegations of that claim include no reference to, nor reliance on, nor

request for relief under, any federal statute.  (Petition, 44:5 – 46:7.)  Respondents' only other

specific examples of federal law references in the Petition, supposedly establishing that this

case could have been brought in federal court to start with, amount to use of the word "federal"

in two paragraphs in the prayer for relief, ¶ 7 in the first cause of action (52:4-19)[10], and ¶ 2(a)

in the second cause of action (54:18).[11]

---

[8] That footnote reads:

> It appears Respondents and bondholders may have anticipated this problem [impropriety of pledging public funding as security for bond debt]:  the CMFA 2021 Revenue Bonds (Community Health System), Series 2021A and 2021B Official Statement, provides at page 21: "In addition, there are Gross Receivables, *possibly including Gross Receivables owing from federal, state, or other governmental entities*, in which the Members of the Obligated Group cannot validly grant a security interest, and the Master Trustee (and thus the Bond Trustee and the holders of the Bonds) will have not have a security interest in such Gross Receivables." [emphasis added.]

[9] Though not substantive support for Respondents' assertion of federal jurisdiction, this header reference appears repeatedly in their Removal Notice:  3:9, 3:25, and 5:16.  .

[10] Petition, 52:5 and 52:14, referenced in the Removal Notice at both 3:25 and 5:20.

[11] Petition, 54:18, referenced in the Removal Notice at both 6:1 and 6:9.

Neither these references, nor the Petition language explaining the CMS approval process, let alone the Petition as a whole, can support a conclusion that the Petition asserts a federal claim on its face.  On the contrary, the claim does not arise from Respondents' non-compliance with federal law, and Petitioners do not seek any federal remedies.  As the master of their complaint, Petitioners may defeat removal by foregoing independent federal claims for relief and asserting only state law causes of action, as Petitioners have done here (or will do by amendment if necessary).  *Arco Envtl. Remediation, L.L.C. v. Dep't. of Health & Envtl. Quality of Mont.,* 213 F.3d 1108, 1114 (9th Cir.2000) (citations omitted).  Respondents' mischaracterization of Petitioners' claims cannot be the basis for federal question jurisdiction, which "may not be sustained on a theory that the plaintiff has not advanced."  *Merrell Dow Pharms., Inc. v. Thompson,* 478 U.S. 804, 809 n. 6, 106 S.Ct. 3229, 92 L.Ed.2d 650 (1986). Under the well-pleaded complaint rule, Respondents have failed to show that this Court has federal-question jurisdiction over the Petition's first cause of action.

### 2. Petitioners' Second Cause of Action alleges violation, and seeks remedies under, exclusively state statutes and regulations.

#### a. *Statutes on which Petitioners rely.*

The California legislature has determined that an entity's receipt of state funding creates an obligation to avoid spending patterns that disproportionately disadvantage protected classes, or that deprive them or reduce quality of resources, services, or access.  California Government Code § 11135(a).  Respondents benefit from many types of public funding, but the statute on which Petitioners rely is exclusively premised on an entity's receipt of monies granted by *the State of California.*  The cause of action raises no plausible issues of federal law or policy.

In order to resolve this claim, the Court will consider evidence of the *impact* of Respondents' spending policies on protected classes:  the *sources* of the monies expended are

10

Petitioners' Points and Authorities In Support of Motion to Remand to Fresno County Superior Court
*Cultiva La Salud, et al. vs. Community Hospitals, et al.*

irrelevant, as long as they include state dollars[12].  Nor does this claim implicate federal policy or interpretation of federal statutes.  As explained *supra*, by the time federal money reaches Respondents, it has been matched and commingled with multiple other types of funding.  The State of California requires that Respondents deploy all their corporate resources to achieve a reasonable degree of equity in the provision of services.  Whether or not they were compliant with federal Medicaid statutes, Respondents' decisions to disinvest in their downtown safety-net hospital while directing a billion dollars into their Clovis facility have created for substantial numbers of Black and Latino patients and their families exactly the type of denials of "full and equal access to the benefits" of a "program" that "receives any financial assistance *from the state*."  California Government Code § 11135(a).  This is not a claim "where the vindication of a right under state law necessarily turn[s] on some construction of federal law." *Hornish v. King County*, 899 F.3d 680, 688 (9th Cir. 2018), quoting *Franchise Tax Bd, supra*, 463 U.S. at 9, and collecting cases.

Respondents miss the mark when they point to an incidental federal reference in the prayer for relief on this cause of action as somehow justifying federal jurisdiction over this exclusively state-based claim.  Respondents' sole supporting authority for this proposition illustrates the weakness of their argument:  the holding in *Franks v. Civigenics*, No. C05-5673RJB, 2005 WL 3211422, is materially different from its description in the Removal Notice (6:1-5):  when the *Franks* plaintiff amended her complaint to incorporate a reliance on the public policy underlying the federal Family and Medical Leave Act, *and refused to remove the reference*, the district court found she was in fact importing the FMLA into her complaint

---

[12] See, 2 C.C.R. § 14020(ii)(1):  "The program or activity covered by Article 9.5, this subchapter, or other implementing regulations need not receive direct state support to be covered.  Such coverage extends to all the operations of the covered entity. This is true even if only one part of the covered entity receives state support."

as an essential element of her claim of wrongful discharge in violation of public policy. *Id*. at *3.

In any event, the published cases addressing removal on federal jurisdiction grounds are hostile to a "mere reference" basis for upholding removal under § 1331. *See, e.g., Rains v. Criterion Systems, Inc.,* 80 F.3d 339 (9th Cir.1996) (references to federal Title VII in a state-law wrongful termination case did not transform that state cause of action into a federal claim for relief: "the complaint merely incorporates Title VII as one of several similar sources of public policy supporting defendant's [sic] state law claims." *Id*. at 344.) See also, *Easton v. Crossland Mortgage Corp.,* 114 F.3d 979 (9th Cir.1997) (denial of remand reversed where references to federal law in the plaintiff's state law sexual harassment claims were only incidental, the plaintiff was not requesting federal remedies, and the plaintiff persistently denied any claim for federal relief.)

### b.   *Relief sought.*

Like the *Rains* and *Easton* plaintiffs and unlike Ms. Franks, Petitioners here do not seek analysis of, nor remedies under, any federal statute or Constitutional provision in connection with their second cause of action. If the Court is concerned that the incidental inclusion of the words "federal Medicaid" in ¶ 2(a) of the prayer could create ambiguity, Petitioners seek leave to amend to remove the term.

### 3.   **Respondents cannot meet the Supreme Court's four-part test for removal.**

Respondents describe the claimed "federal issue" in this case thus: "[B]oth the First and Second Causes of Action necessarily attack Respondents' compliance with, and seek declarations interpreting, provisions of federal laws, including the Social Security Act and the Medicaid Act, 42 U.S.C. § 1396-1, *et seq*., and their implementing regulations—i.e., the

12

Petitioners' Points and Authorities In Support of Motion to Remand to Fresno County Superior Court
*Cultiva La Salud, et al. vs. Community Hospitals, et al.*

federal law and regulations applicable to Medicaid eligibility and supplemental payment

programs, HQAF and DSH, which permeate all of Petitioners' claims."  Removal Notice, ¶ 13,

7:3-9.

Respondents must establish that their federal-question claim to jurisdiction satisfies each

of the Supreme Court's four elements for an exception to the well-pleaded complaint rule.  *City

of Oakland v. BP PLC*, 969 F.3d at 904-905, citing *Gunn, supra*, 568 U.S. at 258 (all four

requirements must be met for federal jurisdiction to be proper).  The removal statute is strictly

construed against removal jurisdiction, and the burden of establishing federal jurisdiction falls

to the party invoking the statute.  *Ethridge v. Harbor House Rest.,* 861 F.2d 1389, 1393 (9th

Cir.1988).

### a.   *Petitioners' claims do not "necessarily raise" a federal question.*

In *County of San Mateo v. Chevron,* 32 F.4th 733 (2022), the Ninth Circuit reminded,

"*Grable* [*& Sons Metal Products, supra*] affirmed a long line of Supreme Court cases that

recognized an exception to the well-pleaded complaint rule when 'federal law is a necessary

element of the [plaintiff's] claim for relief.'  *City of Oakland*, 969 F.3d at 904 (cleaned up).

'Only a few cases' have ever fallen into this narrow category.  *Id.*"  *County of San Mateo,

supra,* 32 F.4th 733, 746.

This is not one of those cases.  While Medicaid statutes form the conceptual basis,

*minimum* requirements, and a permission structure for California's Medi-Cal program, they do

not reflect the bold state legislative activity resulting in a unique State Plan that embodies

California's policy priorities.  Therefore, it is California's state statutory scheme for

implementing Medicaid, rather than the federal Medicaid statutes themselves, to which

Petitioners turn for relief.

Not only is federal law not a "necessary element" of Petitioners' claims, but federal law is not even available to provide a remedy for the conduct at the heart of this action—the impact of Respondents' decisions about how to allocate corporate resources—for which it is California law that makes them accountable to Petitioners.  As the *Franchise Tax Bd.* court made clear, where state law creates the cause of action, the action arises under federal law only when "a well-pleaded complaint establishes ... that the plaintiff's right to relief *necessarily depends* on resolution of a substantial question of federal law."  *Franchise Tax Bd. v. Constr. Laborers Vacation Trust*, 463 U.S. at 27-28 (emphasis added).  That showing is absent from the Respondents' Removal Notice.

This case bears no resemblance to Respondents' cited authority:  they cite *Sauk-Suiattle Indian Tribe v. City of Seattle*, 56 F.4th 1179, 1186 (9th Cir. 2022), *cert. den.*, 144 S.Ct. 74, 217 L.Ed.2d 11 (2023), because "(complaint raised federal question and the court found removal proper where plaintiff alleged violation of federal law and asked for corresponding declarations)."  Removal Notice, 7:17-19.  But in the *Sauk-Suiattle* decision the Ninth Circuit upheld the removal because the court found that "the Tribe's complaint necessarily raises federal issues because it expressly invokes federal laws, and *it is uncontested that the federal issues are disputed*."  Moreover, the complaint explicitly sought declaratory relief under federal Congressional Acts and the Supremacy Clause, and at oral argument the Tribe's counsel "conceded that the suit involved federal questions." *Id*. at 1185 (emphasis added). Here, Petitioners do not invoke federal laws as a ground for relief, the statutes as to which Petitioners seek determinations and declarations are exclusively state statutes, and Petitioners vigorously disagree that the Petition puts federal issues in dispute.  Respondents have not established otherwise.

Respondents also cite *Hornish v. King County, supra*, because "(complaint raised federal

question jurisdiction where plaintiff sought declaratory judgment that would require the court

to interpret federal law to determine scope of defendant's rights)."  Removal Notice, 7:20-22.

However *Hornish* is not helpful to the Respondents either.  There, after the federal Surface

Transportation Board established—pursuant to the federal National Trails System Act

Amendments of 1983, 16 U.S.C. § 1247, *et seq.*—an easement for purposes of trail

development abutting the plaintiffs' property, the plaintiffs filed a complaint seeking a

declaration of rights under Washington state law respecting the easement.  The Ninth Circuit

held that "The resolution of this dispute turns on an interpretation of the Trails Act, because

deciding the scope of King County's rights pursuant to the Quit Claim Deed will require this

court to determine whether the Trails Act creates, supplements, or replaces any previously

existing railroad easement." *Hornish v. King County, supra*, 899 F.3d 680 at 690.  In *Hornish*

there is a straight-line and logical connection between the relief actually sought and the

specific federal statutory provisions essential to the grant or denial of that relief.  Here

however, Respondents have merely referenced the entire body of federal Medicaid legislation

and jurisprudence as the supposed basis for the Petition's claims.  Petitioners assert that their

right to relief is in fact based on California law; Respondents have not established otherwise.

Petitioners respectfully refer this Court to the reasoning in a similar case, *Perea v.*

*Dooley, supra*, in which the petitioners' writ action challenged the State of California's Medi-

Cal reimbursement rates to physicians and clinicians, as a violation of laws which "require[ ]

that Defendants provide Medi-Cal participants with access to medical care equivalent to the

access afforded to people with other insurance coverage." *Perea v. Dooley*, 2017 WL

4676682 at *1.  Perea had been filed in state court; respondents removed it to federal court

claiming federal-question jurisdiction under 42 U.S.C. §§ 1396(a)(8) and 42 U.S.C. §

1396(a)(30)(A) and § 1396(a)(30)(A) of the Medicaid Act, because "the Complaint challenges

15

Petitioners' Points and Authorities In Support of Motion to Remand to Fresno County Superior Court
*Cultiva La Salud, et al. vs. Community Hospitals, et al.*

the sufficiency of the State of California's Medicaid reimbursement rates under these federal Medicaid statutes." *Id.*

The district court remanded the case, finding petitioners' claims arose as well-pled under California law, and—as here—that "to prevail on these claims, plaintiffs need only prove that the defendants violated state law." *Id.*, at *3.

Second, as here, defendants' reliance on references in the complaint to the Medicaid statutes were inadequate to establish that " 'plaintiffs' right to relief necessarily depends on resolution of a substantial question of federal law.' " quoting *Armstrong v. N. Mariana Islands*, 576 F.3d 950, 955 (9th Cir. 2009).  Importantly the *Perea* court found, as here, that petitioners' reliance on the state Medi-Cal statutes' antidiscrimination provisions constituted a fully adequate alternative predicate violation setting forth "objectives substantially similar to those in the federal Medicaid Act." *Id.*  Accordingly, the court found that, as here, "plaintiffs' theory 'can be proven without resort to federal law, [and] no substantial federal question is raised.' " [Citations omitted.]

Finally, the *Perea* court rejected respondents' argument that the CMS Medicaid oversight function essentially implicated federal law for the resolution of petitioners' claims, finding that "the mere fact that changes to Medi-Cal reimbursement rates require federal approval does not mean that a federal issue is 'necessarily raised' nor have defendants provided any authority to support that proposition." *Id.*, at *4 (N.D. Cal. Oct. 18, 2017)

Here, Respondents do not even disclose what specific statutes they claim must be examined, interpreted, or applied in order to resolve the questions these Petitioners raise, and thus cannot refute the adequacy of the state statutes on which Petitioners rely.  The Ninth Circuit in these circumstances refuses to find federal-question jurisdiction:  "When a claim can be supported by alternative and independent theories—one of which is a state law theory and

one of which is a federal law theory—federal question jurisdiction does not attach because federal law is not a necessary element of the claim." *Rains v. Criterion Sys., Inc., supra,* 80 F.3d at 346 (9th Cir. 1996), citing *Christianson v. Colt Industries Operating Corp.,* 486 U.S. 800, 108 S.Ct. 2166, 100 L.Ed.2d 811 (1988).

The Respondents have failed to establish they have carried the "necessarily raised" prong of their federal-question burden.

### b. Respondents cite federal statutes not actually in dispute in this matter.

In their Removal Notice at ¶ 13, Respondents posit that in truth resolution of Petitioners' action unavoidably implicates the Social Security Act and the Medicaid Act, 42 U.S.C. § 1396-1, *et seq*., plus their implementing regulations.  Respondents do not get more specific than that, providing no hint as to which of the hundreds of statutory and regulatory provisions governing Medicaid are specifically pertinent to this case, nor in what way the Petition puts any such provisions in dispute.

In fact, resolving Petitioners' claims will require a declaration of the meaning of the *state law* that sets out the *state purposes* behind California's Medi-Cal program and the Supplemental Medi-Cal funding streams at issue here, together with specific relief that would logically flow from the declaration Petitioners seek.  In their second cause of action, Petitioners apply for a determination under a *state statute*, California Government Code § 11135 that Respondents' resource allocation decisions have created a disparate adverse impact on protected classes *as defined by state law*, together with specific corrective relief that would logically flow from that determination.

The fact that CMS approves California's goals and purposes to ensure their compliance with minimum requirements of the Medicaid law does not make those goals and purposes any less a matter of state law that should be determined in state court.  This case presents no

dispute under federal law:  the Respondents have failed to establish they have carried the "actually disputed" prong of their federal-question burden.

### c.   Without a federal question, the Petition does not raise "substantial" federal issues.

The Petition here calls for a judicial declaration of the meaning of state statutory provisions, and relief under a state anti-discrimination law.  It would not be accurate to say that any "federal issue [is] significant to the particular parties in the immediate suit," let alone that there is any issue of "importance … to the federal system as a whole." *Hornish v. King County*, supra, 899 F.3d at 690, quoting *Gunn v. Minton*, 568 U.S. 251, 260, 133 S.Ct. 1059, 1066, 185 L.Ed.2d 72 (2013).

In *City of Oakland v. BP PLC, supra*, 969 F.3d at 905, the Ninth Circuit reviewed how other courts have fleshed out the definition of "substantial question":   when an issue raises substantial questions as to the interpretation or validity of a federal statute (e.g., *Hopkins v. Walker*, 244 U.S. 486, 489-490, 37 S.Ct. 711, 713, 61 L.Ed. 1270 (1917) (federal mining law)); or when a complaint challenges the functioning of a federal agency or program (e.g., *Grable & Sons, supra*, 545 U.S. at 315, 125 S.Ct. 2363 (IRS enforcement powers)); *Bennett v. Sw. Airlines Co.,* 484 F.3d 907, 911 (7th Cir. 2007) (holding federal jurisdiction lacking because inter alia the plaintiffs did not "challenge the validity of any federal agency's or employee's action")).  A federal issue is not substantial merely because of its novelty (see *Gunn, supra*, at 262, 133 S.Ct. 1059), or because it will further a uniform interpretation of a federal statute. See *Merrell Dow Pharm., supra*, 478 U.S. at 815–16, 106 S.Ct. 3229.

In particular, a federal issue is not substantial if it is "fact-bound and situation-specific," as opposed to a "pure issue of law… that could be settled once and for all and thereafter would govern numerous [similar] cases." *Empire Healthchoice Assur., Inc. v. McVeigh*, 547 U.S.

18

Petitioners' Points and Authorities In Support of Motion to Remand to Fresno County Superior Court
*Cultiva La Salud, et al. vs. Community Hospitals, et al.*

677, 701, 126 S.Ct. 2121, 2137, 165 L.Ed.2d 131 (2006).  In *Empire Healthchoice*, the Court

disclaimed federal interest in sorting out the details of plaintiff's claims that "there were

overcharges or duplicative charges by care providers," and "whether particular services were

properly attributed to the injuries caused by the 1997 accident and not rendered for a reason

unrelated to the accident."  In this case, too, the judicial project will be to scrutinize hospital

system revenues, to determine the propriety of expenditures under the state Medi-Cal statutes,

and to assess the impact of those expenditures on California-defined protected classes.  The

answers to none of these inquiries has the least likelihood of governing future cases under any

identified federal statute.

The Respondents have failed to establish they have carried the "substantial question"

prong of their federal-question burden.

### d.   *Resolution of this case in federal court threatens the federal-state balance essential to the Medicaid program.*

In *Nat'l Fed'n of Independent Business v. Sebelius, supra*, the United States Supreme

Court invalidated the Affordable Care Act's penalties on states that refuse to adopt the ACA's

Medicaid expansion provision.  The majority opinion held the mandate to expand Medicaid

exceeded Congress' authority; in her concurrence/dissent, Justice Ginsburg pointed out "the

state-level policy discretion and experimentation that is Medicaid's hallmark; undoubtedly the

interests of federalism are better served when States retain a meaningful role in the

implementation of a program of such importance." *Id*. at 630, citing Caminker, *State*

*Sovereignty and Subordinacy*, 95 Colum. L. Rev. 1001, 1002–1003 (1995).

Petitioners do not invite federal court interpretation of the state statutes resulting from

that "state-level policy discretion and experimentation" inherent in the Medicaid system.

Conjuring a federal basis for jurisdiction here creates exactly that risk.  Respondents have

failed to show otherwise.

### C. The artful pleading doctrine cannot support federal court jurisdiction.

If the pleading on its face does not assert a federal claim, this Court will evaluate whether Petitioners have artfully pleaded a state law cause of action which necessarily arises under federal law. *Lippitt v. Raymond James Fin. Services Inc., supra,* 340 F.3d at 1041. The Ninth Circuit has described the doctrine as " 'a narrow exception to the straightforward rules of removal jurisdiction,' " where "a court may recharacterize a plaintiff's claims as federal if 'the particular conduct complained of [is] governed exclusively by federal law.' " *Redwood Theatres, Inc. v. Festival Enters., Inc.,* 908 F.2d 477, 479 (9th Cir.1990) (internal citations omitted). A removing party may claim this exception to the well-pleaded complaint rule in one of two situations: (1) complete preemption cases[13], and (2) substantial federal question cases. The second category includes claims that are "necessarily federal in character." *Lippitt, supra,* at 1041-1042.

Respondents assert Petitioners have used "artful pleading" to attempt to avoid federal jurisdiction, without at all explaining with any specificity what federal law is essential to determining the outcome Petitioners seek. Removal Notice, ¶ 5. In support, they cite two inapposite cases: *Federated Dept. Stores, Inc. v. Moitie*, 452 U.S. 394, 101 S.Ct. 2424, 69 L.Ed.2d 103 (1981) [plaintiffs sought to relitigate in state court various antitrust claims identical to those dismissed in federal court action; defendants removed to federal court; remand motion denied and cases dismissed as *res judicata*]; and *Bright v. Bechtel Petroleum, Inc.,* 780 F.2d 766 (9th Cir. 1986). In *Bright*, a tax protester case, defendant proffered background information showing plaintiff letters citing the federal Internal Revenue Code,

---

[13] Respondents do not attempt to justify removal of this action on the basis that it qualifies as a "complete preemption" case.

criticizing the pertinent IRS directive, and referencing Ninth Circuit authority.  Only after removal did the plaintiff claim he was merely challenging withholding of California state income tax.  However, the complaint did not state a claim limited to a state tax issue, and the court concluded that "Bright has raised this new argument as another attempt to evade the jurisdiction of the Northern District, which has been acting swiftly to dismiss similar suits as frivolous." *Id*. at 770.

Neither of these cases remotely pertains to the Petition here before this Court.  Respondents have failed to establish that artful pleading justifies exercise of federal jurisdiction.

## IV.   The issues raised in the Petition are not suitable for this Court's exercise of supplemental jurisdiction.

For decades prior to the adoption of 28 U.S.C. § 1367, federal courts had developed a jurisprudence around their exercise of "pendent jurisdiction" in cases raising both federal and state law issues.  See, *Exec. Software N. Am., Inc. v. U.S. Dist. Ct. for Cent. Dist. of California*, 24 F.3d 1552-1555 (9th Cir. 1994), overruled on other grounds by *California Dep't of Water Res. v. Powerex Corp.*, 533 F.3d 1087 (9th Cir. 2008) (summarizing evolution of pendent jurisdiction case law and passage of the supplemental jurisdiction statute).  Section 1367 built on and incorporated that case law, including the provisions at subsection (c) identifying circumstances under which courts should decline to exercise supplemental jurisdiction over cases raising state law claims.  *Exec. Software N. Am., Inc. v. U.S. Dist. Ct. for Cent. Dist. of California, supra*, 24 F.3d at 1555 ("Congress, in codifying supplemental jurisdiction, has chosen to codify as well the discretionary factors that warrant declining jurisdiction.")

In order to exercise supplemental jurisdiction, the Court must already have original jurisdiction within the meaning of 28 U.S.C. § 1331.  28 U.S.C. § 1367(a).  Since the Petition does not present a federal question, there is no occasion for exercise of supplemental

jurisdiction over the second cause of action.

Even were this Court to find that the first cause of action does present a federal question, Petitioners respectfully suggest it should decline to exercise supplemental jurisdiction pursuant to 28 U.S.C. § 1367(c)(1), because the claim raises a novel or complex issue of State law (including but not limited to interpretation and application of state regulations newly effective in July of 2024 and not yet judicially interpreted by state courts), and (c)(2), because the Government Code § 11135 claim substantially predominates over the claim or claims over which the district court has original jurisdiction.  See, *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726–27, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966) [a decision to relinquish jurisdiction is appropriate when "state issues substantially predominate, whether in terms of proof, of the scope of the issues raised, or of the comprehensiveness of the remedy sought."] Here, remanding the pendent state claims comports with the statute's underlying objective of most sensibly accommodating the discretion-guiding factors of "economy, convenience, fairness, and comity."  *See, e.g., Imagineering, Inc. v. Kiewit Pac. Co.,* 976 F.2d 1303, 1309 (9th Cir.1992), overruled on other grounds by *Diaz v. Gates*, 420 F.3d 897, 900 (9th Cir. 2005) (*en banc*).

## V.   Conclusion

Therefore, Petitioners respectfully request that the Court remand the within matter to the Fresno County Superior Court, directing that a certified copy of the order of remand be mailed by the clerk to the clerk of the State court.

Dated: September 17, 2024                              Respectfully submitted,

*Patience Milrod*
_____
Patience Milrod
Attorney for Petitioners