UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CULTIVA LA SALUD, et al.,<br><br>Petitioners,<br><br>v.<br><br>COMMUNITY HOSPITALS OF CENTRAL CALIFORNIA, et al.,<br><br>Respondents. | Case No. 1:24-cv-01065-JLT-EPG<br><br>ORDER (1) GRANTING MOTION TO REMAND; (2) REMANDING CASE TO THE FRESNO COUNTY SUPERIOR COURT; AND (3) DENYING REQUEST FOR JUDICIAL NOTICE<br><br>(ECF Nos. 13, 29) |

## I. INTRODUCTION

On September 6, 2024, Respondents (1) Community Hospitals of Central California and (2) Fresno Community Hospital and Medical Center removed this case from the Fresno County Superior Court. (ECF No. 1). Petitioners (1) Cultiva La Salud and (2) Fresno Building Healthy Communities move to remand the case back to state court. (ECF No. 13). In support of their motion to remand, Petitioners ask the Court to take judicial notice of the briefing on Respondents' pending motion to dismiss. (ECF No. 29).

As explained below, the Court will grant Petitioners' motion to remand, remand this case to the Fresno County Superior Court, and deny the accompanying request for judicial notice.

## II. BACKGROUND

The petition alleges as follows. Petitioners are nonprofit organizations that work to ensure access to healthcare for low-income, minority, immigrant, and limited-English proficient persons. (ECF No. 1-1, p. 17). Respondents are nonprofit public benefit corporations that manage, operate,

and own two hospitals: (1) Fresno CRMC and (2) Clovis CMC. (*Id.* at 19).

Principally, Petitioners' allegations revolve around Medicaid, a joint federal-state program designed to provide medical coverage to eligible low-income persons, and Medi-Cal, which is California's Medicaid program. More specifically, Petitioners allege that Respondents have violated two statutory schemes: (1) the Hospital Quality Assurance Fee (HQAF) program, which, pertinent here, provides supplemental Medi-Cal payments to hospitals based on the hospital's total number of Medi-Cal services[1]; and (2) the Disproportionate Share Hospital (DSH) program, which, pertinent here, provides additional funding to hospitals that serve a disproportionate number of Medicaid patients.[2]

Petitioners contend that Respondents have improperly used supplemental funding obtained from the HQAF and DSH programs to invest in Clovis CMC, "which serves a much wealthier, whiter, and healthier population, and far fewer Medi-Cal beneficiaries." (*Id.* at 13). And they assert that the law requires Respondents to spend the supplemental funds "to improve access to care and the quality of that care for the Black and Latino low-income patients reliant on Fresno CRMC for their medical care." (*Id.*).

The petition brings two causes of action: (1) unlawful expenditure of federal and state funds to serve low-income patients; and (2) discrimination in state-funded programs, Gov't Code § 11135. As for relief, Petitioners ask for a host of declaratory and injunctive relief. For example, they ask for:

> A judicial declaration that Respondents' decisions to disproportionately invest its strategic capital in Clovis CMC facilities, equipment, and technology, and for the benefit of Clovis CMC patient populations, have created a disparate adverse impact on Fresno CRMC Protected Classes' access to health care and the quality of that care, in violation of Government Code § 11135.

(*Id.* at 66).

And they seek an order requiring Respondents to cease "[f]ailing to provide equal access to emergency services, hospital services, specialty and post-operative care, and provider networks, for residents in those zip codes heavily dependent on Fresno CRMC." (*Id.* at 67).

---

[1] *See In re Gardens Reg'l Hosp. & Med. Ctr., Inc.*, 975 F.3d 926, 931 (9th Cir. 2020) (providing background information about the HQAF).

[2] *See Garfield Med. Ctr. v. Belshe*, 68 Cal. App. 4th 798, 800 (1998) (providing background information about the DSH).

Respondents removed the petition from state court asserting that this Court has federal question jurisdiction. (ECF No. 1). Principally, they rely on the various references to the federal Medicaid program to assert that "[b]oth causes of action raise substantial issues of federal law." (*Id.* at 3).

Shortly after removal, Petitioners filed their motion to remand this case back to state court. (ECF No. 13). They argue that they seek remedies exclusively under state law and that there is not a substantial federal question raised in the petition; thus, the Court lacks subject-matter jurisdiction.

Respondents oppose removal. (ECF No. 18). They argue that the petition contains references to federal law that give rise to federal question jurisdiction.

The motion to remand has been fully briefed and the Court heard oral argument from the parties on November 21, 2024. (ECF No. 30). Thus, the motion is ripe for decision.[3]

### III. LEGAL STANDARDS

"Federal courts are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377, (1994). Further, the presumption is that a case "lies outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction." *Id.* (internal citations omitted).

Respondents removed this case from state court, asserting that a federal question is presented. (ECF No. 1, p. 2) (citing 28 U.S.C. § 1331, which states as follows: "The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States). Such removal is proper only if this case could have been filed in this court. *See* 28 U.S.C. § 1441(a) (providing that state court civil actions "of which the district courts of the United States have original jurisdiction" may be removed to federal court); *Washington v. Chimei Innolux Corp.*, 659 F.3d 842, 847 (9th Cir. 2011) ("A federal court has jurisdiction over a civil case initiated in state court and removed by the defendant to federal district court if the case originally could have been brought in federal court.").

Federal question jurisdiction "is governed by the 'well-pleaded complaint rule,' which

---

[3] The parties have consented to the undersigned ruling on the motion to remand. (ECF No. 22).

3

provides that federal jurisdiction exists only when a federal question is presented on the face of plaintiff's properly pleaded complaint." *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987). There are two ways that a case arises under federal law so as to establish subject-matter jurisdiction. The first, and by far the most common, category is "when federal law creates the cause of action asserted." *Gunn v. Minton*, 568 U.S. 251, 257 (2013). The "slim category" of cases under the second category is where there is a state-law claim that presents a substantial federal issue:

> That is, federal jurisdiction over a state law claim will lie if a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress. Where all four of these requirements are met . . . jurisdiction is proper because there is a serious federal interest in claiming the advantages thought to be inherent in a federal forum, which can be vindicated without disrupting Congress's intended division of labor between state and federal courts.

*Id.* at 258 (internal citation and quotation marks omitted).

A plaintiff may move to remand a case back to state court if the district court lacks jurisdiction. 28 U.S.C. § 1447(c) ("If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded."). The removal statute "is strictly construed and federal jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance." *Duncan v. Stuetzle*, 76 F.3d 1480, 1485 (9th Cir. 1996) (internal citations and quotation marks omitted). Here, because Respondents removed the case and assert that this Court has subject-matter jurisdiction, they have "the burden of establishing that removal was proper." *Id. See also Hawaii ex rel. Louie v. HSBC Bank Nevada*, N.A., 761 F.3d 1027, 1034 (9th Cir. 2014) ("Removal and subject matter jurisdiction statutes are strictly construed, and a defendant seeking removal has the burden to establish that removal is proper and any doubt is resolved against removability.") (internal citation and quotation marks omitted).

### IV.     ANALYSIS

The petition alleges two causes of action. (ECF No. 1-1, pp. 56, 58). As an initial matter, there are no federal claims specifically asserted for either cause of action. Rather, the petition explicitly relies on California statutory provisions to argue that Respondents have improperly used supplemental Medi-Cal funding to benefit Clovis CMC.  Although Medi-Cal receives

federal funds, it is governed by California state law.

Indeed, the portion of the petition discussing the relevant legal authority refers to only state statutes. For example, for the first cause of action, Petitioners state as follows:

> Beginning on about 2009, Respondents began implementing policies and practices that used supplemental Medi-Cal funding in a manner and for purposes that violate *California Welfare and Institutions Code§§ 14169.50, et seq., 14105.98, and 14166.12*, by applying HQAF and DSH funding to expand, equip, and improve their Clovis facility, to pay debt service on bonds for Clovis building projects, to create (and fund losses) for an unnecessary, expensive medical foundation, and to acquire land for further outward expansion-all to the detriment of the patient populations for whose care that public funding is provided.

(ECF No. 1-1, p. 56) (emphasis added).

None of Petitioners' causes of action directly allege a violation of federal law. In analogous circumstances—where plaintiffs challenged reimbursement rates as denying meaningful healthcare to Medi-Cal participants—a court has concluded that disputes over the Medi-Cal program did not raise a substantial federal question. *See Perea v. Dooley*, No. 17-CV-04652-YGR, 2017 WL 4676682, at *4 (N.D. Cal. Oct. 18, 2017) (rejecting arguments that references to Medicaid established federal jurisdiction where the plaintiffs solely relied on California law, including Medi-Cal provisions).

With that background in mind, the Court notes that the petition contains isolated references to federal law, which Respondents argue gives rise to federal question jurisdiction. (ECF No. 18, pp. 14, 17). However, Petitioners counter that, for both causes of action, they allege and seek remedies exclusively under state law and the references to federal law are offered only for context. (ECF No. 13-1, pp. 8, 15). The Court considers the parties' arguments in turn below.[4]

**A. First Cause of Action**

To establish subject-matter jurisdiction for Petitioners' first cause of action, Respondents rely on the following passage from the remedy section of the petition:

> [Petitioners seek] [a] declaration that a security interest in CHS Gross Receivables cannot be granted under *applicable federal* and state *laws* providing restricted funding intended to ensure medical care to low-income and uninsured individuals, to the extent such Gross Receivables secure debt incurred for the purpose of

---

[4] The Court will not address arguments that are unnecessary to the resolution of the motion to remand, *e.g.*, Respondents' argument that, if the Court finds it has jurisdiction, it should exercise supplemental jurisdiction over Petitioners' state law claims. (ECF No. 18, p. 25).

5

> building, improving, or equipping Clovis CMC facilities, unless each such expenditure can be justified by relative volumes of low-income and uninsured patients, with the exception of DSH funding, which cannot be used for any purpose related to Clovis CMC.

(ECF No. 1-1, p. 64) (emphasis added). Respondents argue that, "[b]y seeking a declaration 'that a security interest in CHS Gross Receivables cannot be granted under applicable federal . . . law[,]' Petitioners have" raised a federal question. (ECF No. 18, p. 14).

Petitioners counter that "[a] judicial determination of Petitioners' entitlement to relief requires no interpretation of federal law nor an assessment of available federal remedies," asserting that the relief sought above "is available under California Welfare and Institutions Code §§ 14169.50, *et seq.*, 14105.98, 14166.11, and 14166.12, which limit the expenditure of funds from Supplemental Medi-Cal funding streams . . . to providing access to medical care for the indigent." (ECF No. 23, p. 10). Additionally, Petitioners state that they included this request for relief because it "echoes the language" in Respondents' 2021 bond issue, which they quoted elsewhere in their petition. (*Id.*). The quote from the bond statement is as follows:

> In addition, there are Gross Receivables, *possibly including Gross Receivables owing from federal, state, or other governmental entities*, in which the Members of the Obligated Group cannot validly grant a security interest, and the Master Trustee (and thus the Bond Trustee and the holders of the Bonds) will have not have a security interest in such Gross Receivables.

(ECF No. 1-1, p. 38 n. 26) (emphasis added in petition).

Upon consideration of the applicable legal standards and the parties' argument, the Court agrees with Petitioners that Respondents have failed to meet their burden of establishing a federal question based on this language.

To the extent that Respondents argue that the petition creates federal question jurisdiction simply by invoking federal law, they are wrong. Rather, "in addition to examining the literal language selected by [a party], the district court must analyze whether jurisdiction would exist under a properly pleaded complaint." *Easton v. Crossland Mortg. Corp.*, 114 F.3d 979, 982 (9th Cir. 1997). Accordingly, if a claim in not colorable, a court will not have jurisdiction. *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 513 (2006) ("A plaintiff properly invokes § 1331 jurisdiction when she pleads a colorable claim 'arising under' the Constitution or laws of the United States.").

Under the first method of establishing subject-matter jurisdiction discussed above, federal

question jurisdiction arises "when federal law creates the cause of action asserted." *Gunn*, 568 U.S. at 257. Notably, the mere fact that Petitioners seek declaratory relief is not itself sufficient to establish jurisdiction; rather, there must be an underlying federal legal right to vindicate. *See Schilling v. Rogers*, 363 U.S. 666, 677 (1960) ("Additionally, the Declaratory Judgments Act is not an independent source of federal jurisdiction, *Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 671, 70 S.Ct. 876, 879, 94 L.Ed. 1194; the availability of such relief presupposes the existence of a judicially remediable right.").

Here, Respondents cite one broad provision of federal law (and associated regulations) to establish jurisdiction: "In particular, the Court will need to consider and construe the language and purpose of 42 U.S.C. § 1396r-4 and its implementing regulations to determine if they contain the restrictions alleged by Petitioners and otherwise potentially reconcile federal and state authorities." (ECF No. 18, p. 15). But there are two main problems with his argument. First, this provision, which generally sets forth the requirements for a hospital to be eligible for DSH payments, is not cited anywhere in Petitioners' first cause of action or in the relief section for that cause of action. (ECF No. 1-1, pp. 56-58, 62-66). Rather, the explicit provisions cited in these sections are state law provisions, *e.g.*, the petition states under the first cause of action that, "[b]eginning on about 2009, Respondents began implementing policies and practices that used supplemental Medi-Cal funding in a manner and for purposes that violate California Welfare and Institutions Code §§ 14169.50, *et seq.*, 14105.98, and 14166.12." (*Id.* at 56). Thus, it does not appear that this provision is even implicated.

Second, assuming that this provision were implicated in the petition, as Petitioners point out, Respondents fail to show "that the federal statute creates a right of action in Petitioners, nor even in what way if any the Court must interpret § 1396r-4 in order to determine Petitioners' right to relief." (ECF No. 23, p. 7). For example, Respondents point to no language in the statute (or accompanying regulations) that concerns the question of whether security interests may be granted in gross receivables, let alone one that creates a judicially remediable right.

Notably, even Respondents express doubt as to whether such a provision exists. Their opposition states it will be up to the Court "to consider and construe the language and purpose of 42 U.S.C. § 1396r-4 and its implementing regulations to determine *if they contain the restrictions*

7

*alleged by Petitioners and otherwise potentially reconcile federal and state authorities*." (ECF No. 18, p. 15) (emphasis added). Elsewhere, they state as follows:

> While Respondents acknowledge that a dense federal regulatory framework applies to the funding programs at issue, Respondents should not be required to speculate regarding the "pertinent statutes" referenced by Petitioners in their pleading or the specific federal authorities Petitioners mean to invoke in their request for a declaration under "applicable federal . . . law[]."

(*Id.* at 16).

In short, Respondents have failed to establish that Petitioners' first cause of action raises a federal question so as to establish subject-matter jurisdiction.

## B. Second Cause of Action

To establish subject-matter jurisdiction for Petitioners' second cause of action, Respondents cite the following passage from the remedy section of the petition:

> [Petitioners seek an order requiring Respondents to cease] [e]xpending public and corporate funds in a manner that creates a disparate adverse impact on Fresno CRMC Protected Classes and substantially impairs accomplishment of the *objectives of the* State Medi-Cal and *federal Medicaid programs* for the Low-Income Patients these programs were created to serve[.]

(ECF No. 1-1, p. 64) (emphasis added).

Respondents argue as follows:

> The only way to determine whether the "objectives of the . . . federal Medicaid program" have been violated is to construe applicable federal statutes and regulations, including 42 U.S.C. § 1396r-4 and its implementing regulations. For this reason, as with Petitioners' First Cause of Action, Petitioners' Second Cause of Action necessarily asserts a federal claim.

(ECF No. 18, p. 17).

Aside from Petitioners' prior arguments relating to the first cause of action that likewise apply here—that they rely only on state law and that § 1396r-4 creates no right of action—Petitioners counter that "there is no need, indeed no request, for judicial action based on federal Medicaid law because federal objectives are already woven into California's Medi-Cal statutory and regulatory scheme." (ECF No. 23, p. 10).

Upon consideration of the applicable legal standards and the parties' argument, the Court once again agrees with Petitioners that Respondents have failed to meet their burden of establishing jurisdiction.

8

Once again, § 1396r-4 is not cited anywhere in Petitioners' second cause of action or in the relief section for that cause of action. (ECF No. 1-1, pp. 58-62, 66-69). Rather, the explicit provisions cited in these sections are state law provisions, *e.g.*, the petition states under the second cause of action that, "Respondent hospital system's provision of medical care is subject to the mandates of Government Code § 11135 as a 'program or activity' within the meaning of 2 California." (*Id.* at 58). Thus, it does not reasonably appear that this provision is even implicated.

Additionally, even if § 1396r-4 were implicated, for the reasons noted above in connection with Petitioners' first cause of action, Respondents have failed to demonstrate that this statute (or any accompanying regulation) provides a legal right upon which Petitioners can claim relief or that a substantial federal issue is part of a state law claim. Likewise, to the extent that Petitioners generally reference federal policy in the petition concerning Medicaid, including citing specific federal provisions, such is not enough to implicate a federal question, especially considering that Medicaid's policy objectives overlap with California's Medi-Cal objectives. (*See* ECF No. 1-1, pp. 21-22); *see Rains v. Criterion Sys., Inc.*, 80 F.3d 339, 344 (9th Cir. 1996) ("The direct and indirect references to Title VII in those two state law causes of action do not make those claims into federal causes of action. Rather, the complaint merely incorporates Title VII as one of several similar sources of public policy supporting defendant's state law claims.").

In short, Respondents have failed to establish that Petitioners' second cause of action raises a federal question so as to establish subject-matter jurisdiction.

V.     **REQUEST FOR JUDICIAL NOTICE**

Petitioners have also filed a request in support of their motion to remand, asking the Court to take judicial notice of briefing in this case on Respondents' pending motion to dismiss. (ECF No. 29). That request is denied for two reasons. First, the Court does not find it necessary to take judicial notice of documents "previously filed in the same case"; rather, "[a]n accurate citation will suffice." *NovelPoster v. Javitch Canfield Grp.*, 140 F. Supp. 3d 954, 960 n.7 (N.D. Cal. 2014). Second, the request is offered to support Petitioners' contention that there is no disputed federal issue in this case because Respondents do not raise a federal issue in their motion to dismiss. However, such argument is unnecessary to resolve the motion to remand. Accordingly, the request for judicial notice is denied.

**VI.    CONCLUSION AND ORDER**

For the reasons given above, IT IS ORDERED as follows:

1. Petitioners' motion to remand (ECF No. 13) is granted and this case is remanded to the Fresno County Superior Court.
2. The Clerk of Court shall mail a certified copy of this order to the clerk of the Fresno County Superior Court.
3. Petitioners' request for judicial notice is denied. (ECF No. 29).
4. The Clerk of Court shall terminate as pending any dates, deadlines, and motions (including the motion to dismiss) and then close this case. (ECF Nos. 13, 25, 26, 29).

IT IS SO ORDERED.

Dated:  **November 26, 2024**         /s/ Erica P. Grosjean
                                     UNITED STATES MAGISTRATE JUDGE